WILLIAM MONTGOMERY STARRETT *against* EPHRAIM DOUGLASS, esq.

On a feigned issue from the register's court to try the validity of a will, court may grant a new trial, where the circumstances of the case will warrant it; but they will not set aside the verdict where it is not manifestly against evidence or the charge of the court.

This was a feigned issue to try the validity of the last will of Joseph Douglass deceased, exhibited in the register's office of Westmoreland county, on a wager of 5*l.* on the part of the plaintiff, against 10*l.* on the part of the defendant, as to the proof of the will.

The cause was tried before Yeates, Justice, at Greensburgh, on the 28th May 1793, when a verdict passed for the plaintiff for 10*l.*, the nominal damages.

A rule was obtained to show cause why the verdict should not be set aside, as contrary to evidence, and a new trial granted.

Yeates, J. reported a statement of the evidence had before him as follows : The testimony before the trial was reduced to writing, by the depositions of the several witnesses being taken before the register and assistant justices, which were agreed to be read in evidence to the jury. But it was moreover admitted, that the said Joseph Douglass died unmarried, leaving his next of kin one brother, the defendant, and three nephews by a sister then dead, who was formerly married to one Collins; that he entered into articles of co-partnership with the plaintiff, respecting the keeping of a shop or store, in June 1791, and that they first opened their

store at Uniontown in August 1791, where they continued it until the month of December following, when they removed the goods to Greensburgh. The goods were agreed to have been laid in, chiefly at the expense of the deceased.

The will was in the hand writing of the plaintiff, bearing date on the 16th January 1792, and was published at two different periods, on the 16th and 20th January 1792, in the presence of five witnesses. He thereby devised to the defendant all his wearing apparel, and a sorrel horse; 300*l.* to his nephew Joseph Collins to be paid in three years after his decease; and the residue of his personal estate and all his real estate to the plaintiff.

The depositions of forty three different witnesses were taken for and against the will. To these depositions the court were referred for particulars.

The defendant's counsel urged two objections against the will; the insanity of the testator, and the undue influence of the plaintiff.

On the first ground, they relied on the testimony of eighteen witnessess, who proved strange extravagances, if not strong marks of derangement of mind and folly, exhibited by the deceased, some time before and after the making of the will in question; such as repeatedly sitting up all night, working and filing articles ridiculously, talking to himself as if in conversation with others, burning and throwing into the fire candles, candlesticks, plates, chairs, cups, saucers, bowls, tumblers, shirts, sheets and leggings, sitting down on the wet kitchen floor, concealing sundry articles in his chest, taking things out of the bar-room and hiding them, carrying pistols in his bosom, snapping a gun at a neighbor, shooting guns at night out of his chamber window, &c.

Arguments were insisted on, *ex visceribus testamenti*, to show the undue influence of the plaintiff; since it could scarcely be supposed, that the deceased would leave the bulk of his estate to a stranger, with whom he appeared to have no particular acquaintance before their partnership, in preference to a brother and nephews.

They also inferred this influence of the plaintiff, from his living with Douglass, his frequent opportunities of conversing with him, and forming his mind as he pleased during his fits of intemperance, from his constantly giving way to his wayward humors, and supplying him with unreasonably large quantities of wine and spiritous liquors, particularly at the periods of publishing his will, from his not reading the will to him, though all the other papers were

read to him, and lastly, from the plaintiff's drawing the will himself.

On the other hand, five witnesses who were present at the publications of the will on the 16th and 20th January, positively swore, that Joseph Douglass was then of sane and disposing mind and memory, and under no undue influence. Many witnesses also disposed, that both before and after the making of the will, he talked and acted rationally, when he was not in a state of inebriation, to which he much addicted himself, settled accounts fairly, and appeared in the full possession of his understanding, when he was making any kind of bargain. It was further shown by four witnesses, that he had conceived a dislike to his nephews, and had several times asserted, that his brother should not be bettered by his death, that he would leave 300*l.* to his nephew Joseph Collins, but would give the residue of his estate to the plaintiff, for whom he expressed a great regard.

The defendant at the trial, disclaimed all benefit to be derived to himself from the supposed intestacy of his brother, in favor of his sister's children.

The court summed up the testimony on both sides, to the jury, and told them that drunkenness merely of itself, was no legal exception to the validity of a will, unless it absolutely disabled the party from disposing of his estate with intelligence and reason; but where by habitual intoxication, a man's senses were besotted, and his understanding gone, he could make no will. The impediment is to be proved by the party who makes the exception; for the presumption of law is in favor of the will.

The sanity of the testator, at the immediate period of making the will, must determine its validity. Yet his words and actions both shortly before and after, will be strongly explanatory of his state of mind at the time, and more peculiarly so, where the reasons and grounds of the opinions of the witnesses who attested the will, are not fully satisfactory to the minds of the jury.

A degree of suspicion arose from a devise of the bulk of the property to one, who was seven months before a mere stranger, and the instrument being drawn by that stranger himself, and not read to the testator at the time of execution. But it was certain that one might, if he chose, give his estate to any one whatever, if such was the real inclination of his mind. The declarations of the testator in this instance at different periods, that he would make such a will as is now attempted to be proved, were powerful proofs, indicative of his real intentions.

The jury were directed to weigh with patience and calmness the evidence of the witnesses who subscribed the will, and the grounds of their belief, together with the previous expressions of the testator, respecting the intended disposition of his estate, and contrast the same with the testimony of the other witnesses who impeached it, attended to the dates of the transactions, and the reasons offered in support of their assertions, and pronounce whether the paper produced was the real will of Joseph Douglass, made when he was of sound and disposing mind and memory. They were further told, they were judges of the fact, and exclusive judges of the credibility of the witnesses.

The jury sat up all night, and at length gave a verdict for the plaintiff, in the afternoon of the next day.

Mr. Lewis for the defendant, having read the several depositions, observed, that there is a material difference, as to the practice of granting new trials, between issues at law and issues directed by chancery. In the latter, the object merely is, to inform the conscience of the court, and therefore the same strictness is not required as in courts of common law. 2 Atky. 320. The rule in equity is analagous to the circumstances of the present case.

The testator's sanity is chiefly a question of law. As the law presumes every man to have the use of his reason, unless the contrary be proved, so this being proved accordingly, it then presumes him to be void of understanding, unless the converse is again duly shown. 4 Burn's Ecc. Law, 45. Swinb. 78. Disposing memory in a man is an ability to make disposition of his estate, with understanding and reason. 6 Co. 23. He must have judgment to discern, otherwise the will is void. Moore 759.

There are two kinds of ideocy. The first is a total loss of understanding, where the defect is plain and evident ; the second is where the mind is torpid, or seized with languor, owing either to some natural or accidental cause. In the latter instance, the human mind may make some occasional exertions, when warmed with a favorite or particular subject. But when its vigor and strength are blunted, if not totally destroyed by habitual intoxication, its enfeebled state is incapable of activity.

From the whole of the evidence, it may fairly be collected, that Douglass was sensible and rational until the year 1790. After that period, he became extremely intemperate, and his mental powers were greatly injured, and in the event, deranged.

He forms a connection in trade in the following year, with one to whom he was before an entire stanger, and in the course of the partnership he gives absolute way to his passion for ardent spirits.  He is flattered and cajoled by his false friend, who has opportunities each hour of influencing his mind.  Nothing is denied to him, however injurious.  Strong liquors are furnished to him in abundance.  He is led to the commission of the wildest excesses, and his attachment to his nearest of blood is weakened most probably by misrepresentations.  His strength of body and mind being wholly impaired by frequent debaucheries, he is induced to put his signature to a will penned by the plaintiff, and not even read to him at the moment, whereby he disposes of the chief part of his property to the plaintiff, forgetting the ties of nature and his unoffending nephews.

It is presumed therefore, this case demands a rehearing.  If a second verdict should establish the will, the hard fate of these minors is much to be lamented.

Mr. Ingersoll for the plaintiff, insisted, that the verdict was not against the charge of the court, but that all the facts were left open to the jury, for their final determination.  Jurors are judges of mere fact, and peculiarly so of the credit of the witnesses.  Courts of justice therefore, will cautiously avoid invading their province, unless the verdict is manifestly against evidence.  Should it be otherwise, trials in civil cases by juries would be useless, and all appeals in matters of fact must necessarily be made to the court.

In England, the Lord Chancellor directs a new trial where the first verdict is not satisfactory to his mind ; but not the court of common law before whom the issue was tried.  In some few instances, the courts of Westminister Hall have granted new trials, where the judge has certified that the verdict was against the weight of evidence ; but the modern practice is otherwise.  5 Bac. Ab. 245.  Nor can any instance be cited in later times, where the court has set aside a verdict, on the ground of their dissatisfaction therewith, on the evidence hanging *in equilibrio.*

The two objections against the will, of insanity and influence, were made at the trial, fully argued, and fairly submitted to the jury, who have determined in favor of the instrument, not hastily, but after great deliberation.  The general principles of insanity are well illustrated by Lord Thurlow, in 3 Bro. Cha. Rep. 441.

But it is apprehended, that the weight of evidence considerably preponderated in favor of the plaintiff.  Five witnesses

swore expressly to the sanity of the testator and his freedom from influence, at the two different periods of publishing the will, and gave their reasons at full length. Even in Douglass's fits of intoxication, he adjusted accounts with correctness, possessed his mental powers, and was acute in all his bargains. And beyond this, several witnesses proved the settled intention of his mind at different times, correspondent with the writing produced, that he would dispose of his estate in the manner he has done.

To grant a new trial under such circumstances, would be going further than courts have usually gone, and would intrench on the province of jurors.

By the court. The verdict given was not against the charge of the judge, who tried the cause, nor can we say it was against the weight of evidence.

The declarations of the testator to different persons at divers times, of his intended disposition of his estate, is strong evidence in support of the will, conjoined to the testimony of the five witnesses who swear to his sanity on the two days of publication. We have no difficulty in saying, that we have a superintending power to grant new trials, in cases of this nature, where the circumstances will warrant it ; but in the present instance we do not find ourselves at liberty to set aside the verdict, and the court therefore unanimously discharge the rule, and direct judgment to be entered for the plaintiff.