STEVENS (UNITED STATES v.). See Cases Nos. 16,391–16,394.

---

## Case No. 13,412.

### STEVENS et ux. v. VANCLEVE.

[4 Wash. C. C. 262.] [1]

Circuit Court, D. New Jersey. April Term, 1822.

EVIDENCE — MATERIALITY — HEARSAY — WILLS — COMPETENCY OF TESTATOR — TIME OF MAKING — PRESUMPTION OF SANITY — SIGNING.

1. Question upon the validity of a will and testament. The defendant's counsel offered evidence to prove that a former will, executed by the testator, had been purloined by the plaintiff. This evidence is improper, as it is not pretended that the contents of that will are to be proved, as the plaintiff relies altogether on the validity of another and subsequent will.

2. The declarations of a party to a deed or will, whether prior or subsequent to its execution, are nothing more than hearsay evidence; and nothing could be more dangerous than their admission as evidence, either to control the

construction of the instrument, or to support or destroy its validity.

[Cited in Caeman v. Van Harke, 33 Kan. 338, 6 Pac. 624; Comstock v. Hadlyme Ecclesiastical Soc., 8 Conn. 264; Collagan v. Burns, 57 Me. 471; Couch v. Eastham, 27 W. Va. 803; Dickie v. Carter, 42 Ill. 389. Distinguished in Dinges v. Branson, 14 W. Va. 114; French v. French, Id. 507. Cited in brief in Gibson v. Gibson, 24 Mo. 228. Cited in Herster v. Herster, 122 Pa. St. 256, 16 Atl. 346. Cited in brief in Hoshauer v. Hoshauer, 26 Pa. St. 406. Cited in Kitchell v. Beach, 35 N. J. Eq. 454. Cited in brief in Kenyon v. Ashbridge, 35 Pa. St. 159. Cited in Lewis v. Douglass, 14 R. I. 607; Linton's Appeal, 104 Pa. St. 238; Mooney v. Olsen, 22 Kan. 76. Distinguished in Neel v. Potter, 40 Pa. St. 484. Cited in brief in Robinson v. Adams, 62 Me. 381; Robinson v. Brewster, 140 Ill. 655, 30 N. E. 683.]

3. What constitutes a sound and disposing mind or memory in a person making a will.

[Cited in brief in American Bible Soc. v. Price, 115 Ill. 625, 5 N. E. 126. Cited in Bennett v. Bennett, 50 N. J. Eq. 446, 26 Atl. 573. Cited in brief in Brinkman v. Rueggesick, 71 Mo. 553; Hovey v. Hobson, 55 Me. 269; Hovey v. Chase, 52 Me. 309. Cited in Lee's Case, 46 N. J. Eq. 201, 18 Atl. 528; In re Pensyl's Will, 157 Pa. St. 465, 27 Atl. 672; Reynolds v. Adams, 90 Ill. 149; Rusling v. Rusling, 36 N. J. Eq. 607; White v. Starr, 47 N. J. Eq. 258, 20 Atl. 880.]

4. The only point of time to be looked to by a jury, who are to decide upon the competency of a testator to make a will, is that when the will was executed.

[Cited in Turner v. Hand, Case No. 14,257.]

[Cited in Craig v. Southard, 148 Ill. 45, 35 N. E. 361; Greer v. Greers, 9 Grat. 333; Harden v. Hays, 9 Pa. St. 163; Wilson v. Mitchell, 101 Pa. St. 503; Waddington v. Buzby, 45 N. J. Eq. 174, 16 Atl. 691; Yoe v. McCord, 74 Ill. 45.]

5. What is the nature of the evidence, and how it is to be estimated, in relation to proof of the execution of a will.

6. Construction of the statute of New Jersey relative to the execution of wills.

7. The will in this case was upon strictly legal principles, signed by the testator, his hand being, with his own consent, guided by another, and the will afterwards acknowledged by him.

[Cited in Blair v. Sayre, 29 W. Va. 613, 2 S. E. 97. Cited in brief in Vandruff v. Rinehart, 29 Pa. St. 233.]

8. The presumption of law is always in favour of the sanity of the person whose will is brought into question, at the time the will was executed; and the burthen of proof lies upon the person who asserts unsoundness of mind; unless a previous state of insanity has been established; in which case the burthen is shifted to him who claims under the will.

[Cited in brief in Farrell v. Brennan, 32 Mo. 331; Hill v. Hill, 53 Vt. 579; Williams v. Robinson, 42 Vt. 661.]

The plaintiffs [John Stevens and wife] claim one third of the land in controversy, in right of the female plaintiff as one of the heirs of Benjamin Vancleve deceased, and one other third part under a deed from Dr. Clark and his wife, the latter being also a daughter and one of the heirs of the deceased. The defendant [Joseph W. Vancleve] is the son of the deceased, who claims the whole of the land under an instrument purporting to be the last will and testament of

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Benjamin Vancleve. The cause turned altogether upon the validity of this instrument, which, it was contended by the plaintiffs' counsel, 1. Was not executed according to the requisitions of the laws of New Jersey; and 2. That the said Benjamin Vancleve, at the time he executed the alleged will, was not of sound and disposing mind and memory.

The following summary contains the substance of the evidence as declared in the charge to the jury: Mrs. Pharis, one of the attesting witnesses, deposed, that, on the morning of Sunday, the 24th of August, 1817, she was at the house of Benjamin Vancleve, (who was then in bed, having been struck by the palsy some time early in the month of June preceding, which entirely disabled one half of his body) and heard the defendant inform his father, that the will he had executed in the year 1814 was missing; but that he had a copy of it, and inquired of his father if he would execute that as his will? To which his father answered, "Yes." That upon receiving the above information, he appeared to rouse up like a person from a deep sleep, and asked, "Who has taken it?" The defendant then sent for John Pharis, and after his arrival, the defendant read over to his father the copy of the will distinctly, section by section, and asked him, at the end of each, if he understood it? To which he replied, "Yes." He was then asked, if John Pharis should steady his hand whilst he signed his name? To which he answered, "Yes, I wish him to do it." John Pharis did accordingly steady his hand, and with this assistance, he signed his name to the will. After this was done, Pharis told him that he must acknowledge the will; upon which, the testator put his finger on the seal, and the witness heard him say, "last will and testament:"—having moved her position at the moment, she did not hear the first part of the sentence. The witness further stated it as her opinion, that Benjamin Vancleve was, at the time, in his right mind, and understood what he was doing, and that he was capable of dictating his will. She added, that he could articulate so as that she could understand him very well when he spoke; and that he frequently, when she visited him, prior to this period, after the stroke of the palsy, inquired respecting her own health, and that of her family. She further proved her own signature to the will, and that of the other two attesting witnesses, made in the presence of the testator, and of each other. She stated that, after the will was executed, she saw the defendant, who sat on the bed by her father, conversing with him, but that she did not attend to what was said. She saw the father's lips move, and heard his voice.

The evidence of the two other subscribing witnesses, and also of Mary Vancleve, a granddaughter of the testator, who resided in his family, and who was present when the will was executed, corresponds in every material circumstance with that above detailed. Two of them heard the testator distinctly say, "I acknowledge that (his finger being placed on the seal) to be my last will and testament." John Pharis stated, that he was asked if he acknowledged that to be his last will and testament, and that he answered "Yes, I do." This witness further added, that the testator seemed more revived that day than he had seen him for some weeks; that he does not think that he was capable of disposing of his property by deed, or of dictating and forming a whole will at one time, being too weak for so great an effort; but that he was capable of remembering what he had done at former times, and what disposition he then wished to make of his property. That he spoke very little; only in few words at a time, and then in answer to questions; but that he understood every thing that was proposed to him, and what he was doing, as well as a man could, who was in a weak state.

In support of this testimony, the defendant examined a number of witnesses, who stated that they had seen the testator at different times, before and after his last sickness; that his memory had failed considerably as to names and persons, and recent events; but that he spoke, asked questions, particularly as to the health of those who called to see him; and that in their opinion, he was, when they saw him, of sound mind and memory. On the other side, a great number of witnesses were examined, who deposed that the memory of the testator was greatly impaired, even before the last stroke of the palsy. That he would ask foolish questions, and inquire the names of his former acquaintances who called to see him. Upon one occasion, he inquired how a particular acquaintance of his was, and being answered that he was dead, he not long afterwards expressed a wish to see him. At another time, he mistook one of his nieces for a granddaughter who had long before been dead. Many similar instances of a great decay in his memory, were stated by these witnesses. That after the last stroke of the palsy, they never heard him speak, although he would sometimes make a noise, as if he desired to speak; that when they called to see him, he lay as if in a state of insensibility, with a vacant stare, and apparently unconscious of any thing; neither speaking to, nor noticing those who addressed him, not even his own daughters. That he was entirely childish, as well as helpless, and was treated as if he had been an infant. These witnesses all concur in opinion that the testator was at no time, during his last sickness, competent to make a will, or to transact any other kind of business, and that his mind and judgment were entirely prostrated.

Some evidence was given of declarations by two of the attesting witnesses, Mr. Pharis

and Stephen Johnson, contradictory of their evidence given on oath, as to the capacity of the testator to make his will; in particular, that the hand of the testator, instead of being steadied by John Pharis, was guided, and the name in fact written by him. Some of the witnesses examined for the plaintiffs sat up with the testator at different times during his sickness, and others merely called for a few minutes to see him and to inquire respecting his health.

During the trial, the defendant's counsel offered evidence to prove that the original will, executed by the testator in 1814, when his capacity was not questioned, had been purloined by the female plaintiff.

BY THE COURT. Such evidence is improper, as it is not pretended by the counsel, that they mean to prove the contents of that will, and to rest their defence upon it. On the contrary, they rely altogether, as they avow, upon the validity of the will executed on the 24th of August 1817; and consequently the question respecting its validity cannot in any manner be fairly affected by the evidence offered in respect to the will of 1814. The only tendency of such evidence would be to prejudice the minds of the jury, and to lead them from the question which they have to decide.

The defendant's counsel also offered evidence to prove that the uniform declarations of the testator in favour of the defendant, from the year 1802, had been consistent with the disposition made of his property by the will of 1817. This was objected to, as being inapplicable to the only question in the cause,—the competency of the testator to make his will; the counsel for the plaintiffs disavowing any intention to charge the defendant with fraud, or improper conduct in obtaining the will. Parol evidence to vary or explain a deed or will, except in a case of a latent ambiguity, or of fraud in obtaining a will, is inadmissible. 1 Johns. Eng. Ch. 231, 234; 2 P. Wms. 214; Thomas v. Thomas, 6 Term R. 671; 1 Fonbl. Eq. 70; 2 Vern. 624; Smith v. Fenner [Case No. 13,046]; 2 Johns. 31; 2 South. [5 N. J. Law] 655.

On the other side it was insisted that, upon the question of competency, it might be very material to show that the testator had long contemplated the disposition of his property in the manner designated by his will; as in that case, a smaller grade of memory might be requisite, than would be if such a disposition had not been previously arranged in the mind of the testator. Harrison v. Rowan [Case No. 6,142], in this court; 1 Yeates, 108; 2 Yeates, 46; 1 Hen. & M. 476, 478; 3 Hen. & M. 502, 510; 1 Bay, 335.

WASHINGTON, Circuit Justice. The declarations of a party to a deed or will, whether prior or subsequent to its execution, are nothing more than hearsay evidence; and nothing could be more dangerous than the admission of it, either to control the construction of the instrument, or to support or destroy its validity. If the evidence is offered in support of the instrument, it could only have that effect upon the supposition of a uniform consistency of those declarations, not only with the instrument itself, but with the secret intentions of the party, at all times after those declarations were made; and yet how unsafe a criterion would this be, when most men will acknowledge the frequent changes of their intentions respecting the disposition of their property by will, before they have committed them to writing. The uniform consistency of those declarations, is the chief ground upon which the whole argument in favor of the evidence is rested; and yet, if the evidence be admitted at all, the plaintiffs would be at full liberty to prove opposing declarations of the testator at other times; and thus a door would be open to an inquiry in no respect pertinent to the main subject of investigation, but mischievously calculated to perplex and to mislead the jury. That such evidence has sometimes been given, is proved by many of the cases read by the defendant's counsel; but it would be very unsafe to consider those instances as laying down a rule of law, since, in none of them, was an objection made to the admission of the evidence, so as to submit its competency to judicial inquiry and decisions. The general rule of law is against the evidence, and no case has been cited showing an exception to it, unless when it was offered to repel a charge of fraud, or circumvention of the devisee in obtaining the will. But in this case the plaintiffs' counsel disavows any intention to impute to the defendant a charge of this sort. The evidence is therefore inadmissible.

PENNINGTON, District Judge, concurred.

It was contended by the plaintiffs' counsel, in summing up: (1) That the will was not executed according to the directions of the statute of New Jersey, passed the 17th of March, 1713 (14 Patt. Laws, 5) which declares, that all wills and testaments thereafter to be made in writing, signed and published, by the testator, in presence of three subscribing witnesses, and regularly proved, and entered on the books of records, or registers in the secretary's office, &c. shall be sufficient to devise and convey any lands, &c. This act differs from the statute of 29 Car. II. c. 3, § 5, in this important particular: that the statute speaks of wills signed by the testator, or some other person in his presence, and by his express direction. In this case, it is undeniable that the name of Benjamin Vancleve was written by John Pharis, who not only steadied, but guided his hand, and wrote the name, using the hand of the alleged testator as an instrument, as much so as if he were dead. But even under the statute of 29 Car. II. this could not be considered as a valid execution of the

will, inasmuch as the testator merely consented that John Pharis should steady his hand, as is proved by all the witnesses; there is no evidence that he expressly, or otherwise directed him to sign his name. (2) That the weight of evidence, as to the capacity of the testator to make a will, at the time this was executed, is clearly against its validity. Cases cited under this head: 2 South. [5 N. J. Law] 455; Hoge v. Fisher [Case No. 6,585]; 1 Brown, Ch. 441. 443; 2 Poth. Obl. Append.: 12 Vern. 450; 2 Cro. Jac. 497; Swinb. 113; Cowp. 92; Doug. 241.

For the defendant it was insisted, on the first point, that, upon the evidence, it appeared, that the name of the testator was signed by himself, Pharis merely guiding his hand. But even if the name had been written by Pharis, it would be a good execution; as it would be quite an inadmissible construction of the law of this state to exclude from the privilege of making a will, a person who, by accident or disease, should be incapable of writing his name. Such has never been the construction of the law by the courts of this state. The agency of Pharis is clearly proved to have been exerted at the request of the testator: which would bring the case strictly within the statute of 29 Car. II. (2) The evidence given of the state of the testator's mind, at periods prior or subsequent to the 24th of August, is not such as ought to prevail against the testimony of the attesting witnesses. The presumption of law is always in favour of competency, and the whole burthen is on the heir at law to establish the contrary fact. As to the degree of capacity in the testator necessary to give validity to his will, the following books were referred to: Swinb. 112, 76–83, 96; Jac. Law Dict. 430; Harrison v. Rowan [Case No. 6,142], in this court; 2 Phil. Ev. 191, 193; 3 Mass. 330.

R. Stockton and Wall & Halstead, for plaintiffs.

Mr. Ewing, L. H. Stockton, and Freelinghuysen & Southard, for defendant.

WASHINGTON, Circuit Justice, (charging jury). As the objection to the execution of the will will be noticed hereafter, I shall, for the present, confine my observations to the single question of the testator's competency to make a will. He must, in the language of the law, be possessed of a sound and disposing mind and memory. He must have memory. A man in whom this faculty is totally extinguished cannot be said to possess understanding to any degree whatever, or for any purpose. But his memory may be very imperfect; it may be greatly impaired by age or disease. He may not be able, at all times, to recollect the names, the persons, or the families, of those with whom he had been intimately acquainted; may at times ask idle questions, and repeat those which had before been asked and answered; and

yet his understanding may be sufficiently sound for many of the ordinary transactions of life. He may not have sufficient strength of memory, and vigour of intellect, to make, and to digest all the parts of a contract, and yet be competent to direct the distribution of his property by will. This is a subject which he may possibly have often thought of; and there is probably no person who has not arranged such a disposition in his mind before he committed it to writing. More especially, in such a reduced state of mind and memory, he may be able to recollect, and to understand the disposition of his property which he had made by a former will, when the same is distinctly read over to him. The question is not so much what was the degree of memory possessed by the testator as this—Had he a disposing memory? Was he capable of recollecting the property he was about to bequeath; the manner of distributing it; and the object of his bounty? To sum up the whole in the most simple and intelligent form—Were his mind and memory sufficiently sound to enable him to know, and to understand, the business in which he was engaged, at the time when he executed his will? This being the question, and the only one at this time for your consideration, I shall proceed to lay down the following general rules to assist you in your deliberations.

1. The only point of time to be looked at by the jury, at which the capacity of the testator is to be tested, is that when the will was executed. He may have been incapable to make a will at any time before, or after that period; and the law permits evidence of such prior and subsequent incapacity to be given. But unless it bear upon that period, and is of such a nature as to show incompetency when the will was executed, it amounts to nothing.

This being the important epoch: 2. The evidence of the attesting witnesses; and next to them, of those who were present at the execution—all other things being equal—is most to be relied upon. The reason is an obvious one. The law considers the attesting witnesses, in particular, as called upon by duty to examine into, and to be satisfied of the capacity of the testator to make a will. There are few men so ignorant as not to know, that a person non compos mentis cannot make a valid disposition of his property by will, and that his signature to the will attests, not only its execution, but its validity. These witnesses besides, and others present at the execution, have a better opportunity of judging of the soundness of the testator's mind, from his words, actions, and appearance, than those who merely saw him at other times.

I now proceed to lay before you the substance of the evidence, beginning with that given by the attesting witnesses, and by those examined to support their testimony; and afterwards, that of the witnesses who

speak of the testator's incompetency before and after the execution of the will.

(After summing up the evidence on both sides, the judge proceeded.)

With respect to the evidence given of declarations made by two of the attesting witnesses upon the subject of the testator's competency, in connection with what they have sworn, I think it proper to remark that it ought in most, if not in all cases, to be received with great caution by the jury. The testimony of a witness whose veracity and character are otherwise unimpeached, given under the solemn sanction of an appeal to the great Searcher of hearts, ought not to be lightly estimated, in consequence of loose declarations made at other times to persons in no wise interested in the subject to which they refer, and which were possibly on that account little attended to, imperfectly understood, and never again thought of by them. I do not mean to say that such evidence is unworthy of the consideration of the jury; quite otherwise. But it should be received with some degree of jealousy, and should be thoroughly examined and weighed. If then you believe the four witnesses who were present at the execution of the will, and the facts to which they deposed, three of them being the attesting witnesses, the will was legally executed.

It was contended indeed by the plaintiffs' counsel, that, in point of fact, the name of the testator was written by John Pharis; and if so, the will was not executed according to the provisions of the law of this state. The fact is most probably stated correctly by the counsel: but is it to be believed that, when all persons, except those of unsound mind and memory, are permitted to dispose of their property by will, the legislature could have intended to deny this privilege to those who from accident, disease, or want of education, could not write? If such be the construction of the law, it would be insufficient for the testator to make his mark, since that would not amount to subscribing his name. The fact is, that at the time the act of assembly was passed, the statute of frauds and perjuries, 29 Car. I. was in force in this state, and was not repealed by the act. And although, at a much later period, all the statutes of England were repealed, still the above statute had become incorporated with, and formed a part of the land laws of this state, so far as it respected last wills and testaments; and has always, as I understand from Judge PENNINGTON, been considered as furnishing the rule as to the execution of wills. If so, this will was executed in strict conformity with the statute; since the submission of the testator (who, in relation to this part of the case, is to be considered as fully conusant of what he was doing) to have his hand directed, so as to write his name, was at least equivalent to an express direction to another to sign his name. For it cannot be denied that, under the statute,

the direction to subscribe the name of the testator, may be given by him by signs, as well as by words. But be the law upon this subject as it may, this will, in the opinion of the court, was, upon strictly legal principles, signed by the testator, his hand being with his own consent guided by another, and the will afterwards acknowledged by him. Under these circumstances, the act of Pharis was, in point of law, the act of the testator.

Whether the testator was competent to make his will, is a question of fact, which you must decide, after an attentive consideration of the evidence given on both sides. The presumption of law always is in favour of sanity at the time the will was executed, and the burthen of proof lies upon the person who asserts unsoundness of mind; unless a previous state of insanity has been established, in which case, the burthen is shifted to him who claims under the will. In the examination of this question, your first inquiry will naturally be, can the evidence be so reconciled as that the facts stated by the witnesses on both sides may be true? If, by a fair comparison of the evidence, and a correct course of reasoning, this can be done, charity, as well as the injunctions of law, call upon you to examine that evidence with this view. Although the testator's memory had greatly failed, even to the extent stated by many of the plaintiffs' witnesses; although when those witnesses saw him, sometimes for a very short period, at others for a long duration, the testator sometimes addressed by the witnesses, and at other times not spoken to at all, or excited to speak,—although he was sometimes seen by those witnesses lying silent, and in a state of apparent insensibility, with a vacant or stupid stare, so helpless as to be ministered to as if he were an infant; sometimes appearing to recognise those about him, and at other times not;—may he not have spoken and acted precisely as the four witnesses who were with him when the will was executed have sworn he did? Between those witnesses there is no material contradiction, though they do not state all the circumstances precisely in the same way. May not John Pharis have spoken the truth, and judged correctly, when he deposed that the testator was more revived on the morning of the 24th of August than he had seen him for three or four weeks preceding, and that he continued so for the greatest part of the day? May not the anodynes, which it seems he was in the habit of using, have affected his speech, or his disposition to speak at particular times? And may he not have been more disposed, at all times, to converse with, or address questions to the members of his family, who were generally in his room, and attending to him, rather than with strangers, or even neighbours and friends who called only occasionally to see him? These, and similar questions, may be well worthy of the serious examination of the jury. But if, in your opinion, there are irreconcilable con-

tradictions in the evidence, so that the state of the testator's mind could not be as the plaintiffs' witnesses have deposed it was before and after the 24th of August, and yet that he should be competent to make his will on that day; you will then have to weigh the credit of the witnesses, to inquire into their respective capacities to form a correct judgment upon the matters about which they have deposed, and to compare the opportunities of judging correctly which were offered to the witnesses on the one side and the other.

The jury found for the defendant.