# Wilson et al. *versus* Mitchell et al.

| | |
|---|---|
| 101 | 495 |
| 154 | 523 |
| 101 | 495 |
| 157 | 275 |
| 101 | 495 |
| 162 | 568 |
| 101 | 495 |
| 173 | 228 |
| 174 | 379 |
| 101 | 495 |
| 179 | 653 |
| 101 | 495 |
| 184 | 144 |
| 101 | 495 |
| 185 | 62 |
| 101 | 495 |
| 196 | 194 |
| 101 | 495 |
| 202 | $^2$200 |
| 101 | 495 |
| e203 | $^1$418 |
| 101 | 495 |
| 206 | $^1$ 55 |
| 101 | 495 |
| f220 | $^4$535 |

1. In determining whether or not a testator has been of sound mind and disposing memory, the question is, were his mind and memory sufficiently sound to enable him to know and to understand the business in which he was engaged at the time when he executed the will?

A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it and of the persons and objects he desires shall be the recipients of his bounty. He must have memory, but the failure of memory is not sufficient to create the incapacity unless it be total or extend to his immediate family or property.

2. A case should not be submitted to the jury when the evidence is so insufficient that the court would not sustain the verdict.

The question of the sufficiency of evidence is for the court; unless that evidence be sufficient it is error to submit it to the jury.

3. A man over one hundred years of age executed a will by which he devised his property; one-half to certain of his relatives, one-fourth to his legal adviser and one-fourth to a woman with whom he had lived for many years and who took care of him. He was blind and partly deaf. His memory was treacherous as to recent events; he would repeat the same thing several times, and slept almost constantly. In his prime his mental and physical vigor had been remarkable and he had been observant of the proprieties of life; while in old age his vigor abated and he became extremely filthy in his habits. Some who had known him in the prime of life thought that he lacked testamentary capacity. Some time prior to the execution of his will he had made a somewhat similar disposition of his property by deed, which he revoked before executing his will. In a feigned issue of devisavit vel non to determine, inter alia, whether the alleged testator was or was not of sound and disposing mind.

*Held*, that there was no sufficient evidence to sustain the negative of the issue and the court was right in taking the question from the jury.

4. When an alleged testator is, by reason of age or other cause, of weak mind, though his weakness is not sufficient to create testamentary

incapacity, the fact that a person whose advice has been sought and taken by the testator receives a large benefit under the alleged will raises a presumption of undue influence; and the burden rests on such beneficiary to rebut that presumption by affirmative evidence of mental capacity, and the absence of undue influence.

5. The evidence in this case held to disclose no actual fraud or undue influence in procuring the will, but merely to warrant the submission to the jury of the question whether the legal adviser who drew up the will and received one-fourth of the estate devised by it, had proved that the alleged testator had a full understanding of the nature of the instrument and of the disposition of his property thereby made.

6. The evidence in this case failing to disclose that the legal and confidential adviser had ever made any representation to the testator as to the value of his services, or requested compensation by a provision in the will : *Held*, that it was not error to refuse to charge that the devise to such adviser was void if incommensurate with the services rendered.

November 24th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Butler county :* Of July Term 1883, No. 238.

This was a feigned issue *devisavit vel non,* to test the validity of the alleged will of David Dougal, wherein Lewis Z. Mitchell, executor, trustee and devisee, William Protzman and Catharine, his wife, in her right and William M. Dougal were plaintiffs, and A. P. Wilson, Wm. A. P. Wilson, Caroline Ennis, James Dougal, Helen A. Dougal, Anna D. Wilson, James N. Anderson and Maggie J., his wife in her right, were defendants.

The issue was framed to determine: (1) Whether at the time of the execution of his will the testator was of sound and disposing mind and memory; and (2) Whether the execution thereof was procured by fraud, duress, imposition, and undue influence. The plaintiffs were the beneficiaries named in the will; the defendants were the heirs and next of kin of the testator.

The case was tried before McDERMITT, P. J., of the 35th district, to whom the case was certified, McJUNKIN and BREDIN, JJ., being related to one of the parties to the suit.

Upon the trial the following facts appeared in evidence : David Dougal died on November 8th 1881 at the age of nearly 102 years. He was unmarried, and in his early and mature manhood he was possessed of great physical and mental vigor. He was naturally intelligent and was well informed in the sciences and general literature. About ten years before his death he had a paralytic stroke, and from that time his mind and memory were very much enfeebled. He became very dull of hearing and in consequence of the shrinking of his brain he was affected with senile cataract causing total blindness. He was forgetful of

recent events, would often repeat the same thing several times over, and at and before the making of his will slept almost constantly. He became also very filthy and even obscene in his habits, although formerly he was observant of the proprieties of life. Several witnesses who knew him well and who had seen him within two or three years before his death testified that in their opinion he was not able to make a will. A large number of expert physicians testified in answer to hypothetical questions to his testamentary incapacity.

Upon November 9th 1876 Dougal took up his residence in the family of William Protzman, a neighbor, with whom he resided, with the intermission of about a year, until his death. In August 1878 Dougal executed a deed of one-half of a certain farm, which he owned, to Mr. and Mrs. Protzman in consideration of "their boarding, lodging, washing, mending, nursing and every suitable attention to be rendered and given by the said William and Catharine Protzman during the natural life of the said Dougal, in sickness and health and the decent burial of the said Dougal." In April 1879 he executed a deed of the remaining half of his farm to the same parties, for the same consideration. In the same month he made a deed of some town lots, which he owned, to other of the defendants, and at the same time executed a will disposing of his other property, which together with the deed he entrusted to the plaintiff, Lewis Z. Mitchell, who was his conveyancer and legal adviser, with instructions to deliver the same after his death. Upon December 31st 1880 Mitchell called upon Dougal at Protzman's house, bringing with him the deeds and will above mentioned. According to his testimony he found William Protzman and his wife in the room with Dougal. Dougal asked for the deeds and the will and burned them, directing Mitchell to draw up a new will. He directed that all his property, which was worth about $15,000, should be divided into four parts and distributed these parts: one to Lewis Z. Mitchell, one to Mrs. Protzman and one to each of his grand-nephews William M. and James Dougal. The will continued as follows:

"I declare the above devise to Lewis Z. Mitchell and his heirs and assigns forever, to be in full and complete satisfaction of all claims of the said Lewis Z. Mitchell, for professional and other services rendered me to date. I hereby nominate and appoint Lewis Z. Mitchell, who I shall hereafter name as my executor, the trustee of the said Catharine Protzman for the care, management and control of the real estate devised to her, and the devise to her is in consideration of love and natural affection, and in full and complete satisfaction of all the excellent care and attention bestowed and to be bestowed on me by herself and family, and is in addition to any and all conveyances

[Wilson *v.* Mitchell.]

heretofore made the said Catharine Protzman and William Protzman, her husband.

"I do further order and direct my executor hereinafter at my death to make division and partition of the real estate herein devised to and among those entitled to receive the same.

"Lastly, I nominate, constitute and appoint Lewis Z. Mitchell, within named devisee, sole executor of this my last will and testament, hereby making void and revoking all former wills by me at any time heretofore made."

The will was signed by the testator and witnessed by the four children of Mrs. Protzman, who were called in for that purpose. The testimony of Mitchell was substantially corroborated by that of the Protzmans. Shortly after the execution of the will Augustus Jackman, a neighbor, was requested by Protzman to come into the house and sign the will as a subscribing witness. He came, but the testator refused to allow him to sign. Subsequently, however, in the month of June following, he permitted it.

Other material testimony will be found alluded to, in the opinion of Mr. Justice TRUNKEY.

The defendants presented, inter alia, the following points:

4. "When an attorney draws a will for a client, who is aged and infirm, with no relatives of the testator present, and by which the attorney is made a devisee of a considerable portion of the property, it is prima facie a constructive fraud."

Answer. "Mere feebleness of body in an old man with the absence of all his relatives does not invalidate a will in favor of such a devisee. So explained, this point is refused." (5th assignment of error.)

5. "When an attorney, who draws a will for an aged and infirm client, in the absence of all the testator's relatives, for an alleged consideration of past services, is made one of the principal devisees, it is incumbent on the attorney to prove by clear and satisfactory evidence, the nature and value of the services, and that the devise is not incommensurate with the services rendered."

Answer. "If the law were as prayed for in this point, no devise by a client to his attorney for a sum larger than what the former owed the latter would be valid; if this had been an equitable contract between the parties on which each had the right to expect equal benefits from the contract, the point would be sound, but if there was evidence tending to show that Mitchell had fraudulently induced Dougal to believe that he owed him a sum for professional services equivalent to the value of the undivided one-fourth part of said two lots, the point would be affirmed, but so explained, it is refused." (6th assignment of error.)

[Wilson v. Mitchell.]

8. "That as the undisputed evidence in this case establishes at time of making the alleged will, that David Dougal was over one hundred years old, was blind, hard of hearing and physically feeble; that Lewis Z. Mitchell his attorney drew the will in the absence of all relatives of David Dougal and in the presence of William Protzman and Catharine Protzman his wife, and their children, with no strangers present and neither Mitchell nor any of the Protzmans were kin of the decedent, and by that will Lewis Z. Mitchell and Catharine Protzman were made devisees of one-half of the property devised, it is incumbent on the plaintiffs in this case to establish clearly and satisfactorily the absence of fraud and undue influence."

Answer. "We explained in the general charge, that there was not evidence to go to the jury on the question of actual fraud, or undue influence, and, as the effect of the legal fraud consequent upon such confidential relation has been fully discussed in our general charge, it is unnecessary to answer this point further, especially as the doctrine of legal fraud has also been discussed in some of the preceding answers to other points." (9th assignment of error.)

11. "That under the facts of this case, very slight evidence of fraud, or undue influence, if not clearly explained or rebutted, would invalidate this alleged will."

Answer. "As we understand this point of the defendants has relation to fraud in fact and not in law, and as that is withdrawn from the consideration of the jury, this point is answered no further." (12th assignment of error.)

12. "That if the alleged will was obtained through fraud or undue influence, the verdict of the jury should be for the defendants."

Answer. "We answer this as explained in our answer to the last point; the question is not before the jury at all as to whether there was actual fraud or not." (13th assignment of error.)

The court in answer to numerous points and in its general charge withdrew the consideration of the question of lack of testamentary capacity from the jury on the ground that there was not enough evidence upon the point.

Upon the question of fraud the court further charged as follows:

"Where the alleged testator is shown by evidence to be weak in mind, whether arising from age, bodily infirmity, great sorrow, or other cause tending to produce such weakness, though not sufficient to create testamentary incapacity, and the person whose advice has been sought and taken, receives a large benefit under the instrument propounded as a will, it must be shown affirmatively, that the alleged testator had full under-

standing of the nature of the disposition contained . in it.   The general rule, undoubtedly is, that testamentary capacity and knowledge of the disposition made, are presumed.   Where the testamentary capacity is perfect, fraud or undue influence must be shown.   In such case, the undue influence must be such as to destroy the freedom of the will of the party, or at least very much to impair it.   But not so in the case of an old, infirm and mentally weak man, disposing of his estate in favor of his confidential adviser:   Cuthbertson's Ap., 1 Out. 173.

   "There should be very clear evidence of mental capacity, and proof, independent of the execution of the will, that Mr. Dougal's mind was free and unbiased by the counsel, advice or influence of Mr. Mitchell in so executing it.   In Cuthbertson's Ap., supra, C. J. SHARSWOOD says: "It has been decided that the beneficiary himself . is a competent witness to prove the will.   He cannot complain then that the rule is hard or unjust, which requires him to make it clearly appear that the gift to him was the free, intelligent act of the testator."   You must not understand from these rules of evidence, as to how the plaintiffs must show the bequest to Mitchell to have been the free, intelligent act of the testator, that you are to be governed by the rule in criminal cases, to wit: that therefore the plaintiffs must show beyond all reasonable doubt, that the execution of the will was his own act. . . . .

   "[Now, gentlemen of the jury, you have observed already that we have withdrawn from your consideration every fact but one single isolated one, to wit: Did Lewis Z. Mitchell, at the time of the execution of this will, exert any undue or improper influence over Mr. Dougal.   In other words, has he shown by such evidence as we have described in our general charge, and shown affirmatively, also, that he did not influence or operate upon the mind of David Dougal at the time this will was made.  In other words, was the making of this will the free, voluntary, uncontrolled act of David Dougal's own mind.]"   (14th assignment of error.)

   Verdict and judgment for the plaintiffs.   Defendants thereupon took this writ of error, assigning for error the answers to the points cited, the taking the question of testamentary capacity from the jury, and that portion of the general charge noted above.

   *George A. Jenks* (with whom were *W. D. Brandon*, *T. C. Campbell* and *Clark*), for plaintiffs in error, reviewed the evidence at length, and contended that the conflicting testimony should have been submitted to the jury.   The sanity of the testator and all questions of fraud belong to the jury: Lewis *v.* Lewis, 6 S. & R. 489 ; Leech *v.* Leech, 5 Clark 86 ; Tenbrook

[Wilson v. Mitchell.]

v. Lee, 5 Clark 37; Daniel v. Daniel, 3 Wright 191; Tawney v. Long, 26 P. F. Smith 106; McMaster's v. Blair, 5 Casey 298. Our fourth point should have been affirmed: Greenfield's Estate, 2 Harris 489, 505; Dean v. Negley, 5 Wright 312; Story's Equity § 310, 311.

If the devise to Mitchell was meant to pay an indebtedness to him as attorney, he should show that there was some indebtedness or services rendered such as the testator had in his mind. If there was none, the devise was made under a false impression: Boyd v. Boyd, 16 P. F. Smith 283; 1 Redfield on Wills pp. 529, 530, 514; McMahon v. Ryan, 8 Harris 329, 331.

*Thompson* and *McCandless* (with whom were *Fleeger*, *McQuisition* and *Walker*), for the defendants in error.—It is the province of the court to determine the question of testamentary capacity, and it is error to submit it to the jury, unless the evidence is sufficient. The scintilla doctrine is exploded: Knight's Appeal, 7 Harris 493; Restine's Estate, 3 Weekly Notes 27; Mealey's Estate, Ibid. 370; In re Will of Ellen de Benneville Shaw, 1 Ibid. 332; Colegate's Estate, 35 Leg. Int. 90; Jane Hardy's Will, 34 Leg. Int. 248; Boyer's Estate, 36 Leg. Int. 292; De Puy's Estate, 1 Weekly Notes 212; Frowert's Estate, 2 Ibid. 588; McLean's Estate, 2 Ibid. 338; Elizabeth Hoge's Estate, 2 Brewster's Reports 450; Mintzer v. Baker, 5 Phila. Rep. 455; Dean v. Negley, 5 Wright 317; Graham's Appeal, 11 P. F. Smith 43; Bradford's Will, 1 Parsons 157; Wikoff's Appeal, 3 Harris 281; Commonwealth v. Bunn, 21 P. F. Smith 412; Cozzen's Will, 11 Id. 196; Foster's Appeal, 6 Norris 67; Wickersham's Appeal, 25 P. F. Smith 334; De Haven's Appeal, 25 Ibid. 337; Wainwright's Appeal, 8 Norris 220; Ryder v. Wombwell, Law Reports, 4 Exchequer 38; Jewell v. Parr, 13 Com. Bench 909; Toomey v. The London & Brighton Railway Co., 3 Com. B. N. S. 150; Wheelton v. Hardisty, 8 Ellis & Blackburn 262; Raby, Exr. of Cell v. Cell, 4 Norris 80; Hyatt v. Johnston, 10 Norris 196.

"The existence of the fiduciary relation does not annul the testamentary act in favor of his client, but such facts call for watchfulness lest some improper influence may be exercised:" Harrison's Appeal, 4 Out. 458; Boyd v. Boyd, 16 P. F. S. 292. The undue influence must be a present constraint operating on the mind of the testator at the time of his executing the will. Eckert v. Flowry, 7 Watts 46; McMahon v. Ryan, 8 Harris 329; Tawney v. Long, 26 P. F. Smith 115. The influence exerted must amount to a moral coercion which restrained independent action and destroyed free agency: Lovett v. Lovett, 1 F. & F. 581; Morris v. Stokes, 21 Geo. 552; Dean v. Negley, 5

Wright 312; Sutton *v.* Sutton, 5 Harrington 459; Taylor *v.* Kelly, 31 Ala. 59; Blakey *v.* Blakey, 33 Ala. 611; Stevenson *v.* Stevenson, 9 Casey 470; Zimmerman *v.* Zimmerman, 11 Harris 375.

Mr. Justice TRUNKEY delivered the opinion of the court, December 30th 1882.

The determination of the first question presented in the issue was withdrawn from the jury by the court directing them to find that at the time of the execution of the alleged will, David Dougal was of sound mind and disposing memory. If this ruling was correct, the first four assignments of error cannot be sustained, even if the defendant's first three points were sound. In considering whether the question should have been submitted, some well settled principles may first be noted.

A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons and objects he desires shall be the recipients of his bounty. It is not necessary that he collect all these in one review. If he understands in detail all that he is about and chooses with understanding and reason between one disposition and another, it is sufficient for the making of a will: Daniel *v.* Daniel, 39 Pa. St. 191; Tawney *v.* Long, 76 Id. 106. If from any cause he is so enfeebled in mind as to be incapable of knowing the property he possesses; of appreciating the effect of any disposition made by him of it; and of understanding to whom he intends to bequeath it, he is without the requisite testamentary capacity: Leech *v.* Leech, 21 Id. 67. "He must have memory. A man in whom this faculty is totally extinguished cannot be said to possess understanding to any degree whatever, or for any purpose. But his memory may be very imperfect; it may be greatly impaired by age or disease. He may not be able at all times to recollect the names, the persons or the families of those with whom he had been intimately acquainted; may at times ask idle questions, and repeat those which had before been asked and answered; and yet his understanding may be sufficiently sound for many of the ordinary transactions of life. He may not have sufficient strength of memory, and vigor of intellect, to make, and to digest all the parts of a contract, and yet be competent to direct the distribution of his property by will. This is a subject which he may possibly have often thought of; and there is probably no person who has not arranged such a disposition in his mind before he committed it to writing; more especially, in such a reduced state of mind and memory, he may be able to recollect and to

understand the disposition of his property which he had made by a former will, when the same is distinctly read over to him. The question is not so much what was the degree of memory possessed by the testator as this—Had he a disposing memory? Was he capable of recollecting the property he was about to bequeath; the manner of distributing it and the objects of his bounty? To sum up the whole in the most simple and intelligent form—Were his mind and memory sufficiently sound to enable him to know, and to understand, the business in which he was engaged at the time when he executed the will?" Stevens *v.* Vancleve, 4 Wash. C. C. 262; Lowe *v.* Williamson, 1 Green Ch. 82. Neither age, nor sickness, nor extreme distress or debility of body will affect the capacity to make a will, if sufficient intelligence remains. The failure of memory is not sufficient to create the incapacity, unless it be total, or extend to his immediate family or property. The want of recollection of names is one of the earliest symptoms of the decay of the memory; but this failure may exist to a very great degree, and yet " the solid power of the understanding" remain : Van Alst *v.* Hunter, 5 Johns. Ch. 148.

A careful examination of the facts related by the witnesses who had acquaintance with Dougal and opportunity to observe his condition about the time of the execution of the will, reveals no sufficient evidence of testamentary incapacity to warrant its finding against the convincing evidence that he had disposing mind and memory. Excepting the attesting witness to the will, one who is not an expert can only testify his opinion that the testator's mind was unsound, after having stated facts within his own knowledge tending to show that condition; and whether he has testified to such facts as entitle his opinion to go to the jury is always a question for the court: First N. B. of Easton *v.* Wirebach's Exr., 12 W. N. C. 150. In the admission of testimony the court allowed the defendants great latitude, and having heard it all, upon determining its sufficiency, properly gave no weight to opinions which were incompetent.

Dougal had lived over one hundred years before he made the will, and his physical and mental weakness and defective memory were in striking contrast with their strength in the meridian of his life. He was blind; not deaf, but hearing impaired; his mind acted slowly, he was forgetful of recent events, especially of names, and repeated questions in conversation; and sometimes, when aroused from sleep or slumber, would seem bewildered. It is not singular that some of those who had known him when he was remarkable for vigor and intelligence, are of opinion that his reason was so far gone that he was incapable of making a will, although they never heard him utter an irrational expression. To remark the testimony of each wit-

ness called by the defendants would be vain, but the general character may be learned from one of the most intelligent.—Mr. Dunlap ; he knew Dougal in 1815, studied surveying with him in 1835, was an intimate friend, was very frequently with him in the line of their business, and when Dougal ceased surveying he turned his business over to the witness. He testifies that Dougal was a strong-minded man, wrote rapidly and well, and was very tenacious of his opinions ; a tender and feeling man, always glad to meet his old acquaintances of childhood ; that in the last years of his life his mind was not so vigorous ; that in 1880 his memory appeared to be right on transactions in the prime of his life, on these he conversed as well as ever ; did not talk about recent transactions, but he asked about witness' wife ; asked the same question over several times, as if he had forgotten he had asked it before ; saw nothing like insanity about him, and never heard an irrational or insane expression by him, and observed no hallucination or delusion ; and the witness thinks that under solicitation and well-wishers, Dougal would have readily changed his mind, and doubts if he had capacity to make a will. Surely, this testimony does not show want of testamentary capacity. All true, and Dougal could understand the business in which he was engaged when he made his will, knew the property he possessed, and understood to whom he desired to give it. Other witnesses, who knew less of Dougal, had positive opinions that he lacked testamentary capacity, but the facts they stated, if not precisely the same as stated by Dunlap, come as far short of justifying such opinion.

The testimony of the experts, physicians, was upon hypothetical statements, and had the evidence warranted the finding of facts as stated in the interrogatories, the question of the testator's capacity to make a will, ought to have been submitted to the jury. But the learned judge of the common pleas was right in holding that in no just view of the evidence could such a case be found as the experts considered and passed upon.

The testator left the home of his kindred at an early age, and thereafter his intimate friends and associates were strangers to his blood. Until he became blind he lived alone. During the last few years of his life he was in the house of Mrs. Protzman, and the care she and her family gave him was satisfactory to himself. For many years Mr. Mitchell had been his attorney and friend, and in his blindness and feebleness he often requested and received visits from Mitchell more of a friendly than professional character. His estate was not large, and it does not appear that he had made any disposition of it until a short time before his death. He conveyed one-half the farm to Mrs. Protzman in August 1878, and the other half in April 1879. He acknowledged two deeds on April 28th 1879, one to William

Dougal and one to James Dougal, for the lots in Butler; and about the same time made a will.  On December 31st 1880, he destroyed said will, and also, the deeds to William and James Dougal, and made a will devising the two lots in Butler to William M. Dougal, James Dougal, Catharine Protzman and Lewis Z. Mitchell, share and share alike.  He appears to have been grateful for the care and kindness of those about him. Whatever may be thought of the wisdom of the devises, or of the just claims of his distant collateral relatives upon his bounty, the circumstances of this will add little force to the allegation that he had not disposing memory at the date of its execution.

We are of opinion that the court rightly withdrew the question from the jury.  A case should not be submitted where the evidence is so insufficient that the court ought not to sustain the verdict: Cauffman v. Long, 82 Pa. St. 72.

The remaining assignments relate to the question, whether the will was procured by fraud, duress, imposition and undue influence.  After calling attention to the fact that Mitchell had been the attorney and confidential adviser of Dougal, that he wrote the will and himself was a considerable beneficiary, the court charged, that when the alleged testator is weak in mind, arising from age or other cause, though such weakness is not sufficient to create testamentary incapacity, and the person whose advice has been sought and taken, receives a large benefit under the instrument propounded as a will, it must be shown affirmatively that the alleged testator had full understanding of the nature of the disposition contained in it.  In the case of an old, infirm and mentally weak man, disposing of his estate in favor of his confidential adviser, the general rule that testamentary capacity and knowledge of the disposition made are presumed, does not apply.  There should be very clear evidence of mental capacity and proof, independent of the execution of the will, that Mr. Dougal's mind was free and unbiased by the counsel, advice or influence of Mr. Mitchell in so executing it.  The beneficiary himself is a competent witness and cannot complain that the rule is hard or unjust, which requires him to make it clearly appear that the gift to him was the free, intelligent act of the testator.  Moreover, the defendants' seventh point was affirmed, as modified or explained in the general charge.  And nothing has been pointed out in the charge which diminishes the force of that proposition.  That these were the fitting instructions respecting the constructive fraud from the relationship between Dougal and Mitchell, is not denied; but the defendants insist that the question of actual fraud should have been submitted, or that the jury should have been instructed to find for the defendants.

There was no evidence of any persuasion, entreaty or request

by any one, for Dougal to devise or bequeath the whole or any part of his estate to Mitchell or Mrs. Protzman. The only thing pointing to such request is the testimony of Kate Bauldauf, that Mrs. Protzman proposed to the witness to ask Dougal to will her something; but the witness did not. That was about ten years before the making of the will. Doubtless, there was the influence of affection and attachment resulting from the care and attention of Mrs. Protzman, but that by itself is a ground in support of the testamentary act in her favor. If Mitchell and Mrs. Protzman testified truly, Dougal himself directed the disposition of his property. If they and the subscribing witnesses are believed, the will was read to Dougal several times, and it is too simple to require explanation. It was executed in December, and in the next May Dougal desired that Jackman should also witness it and it was again read in the hearing of Jackman. Then he declined to have it witnessed by Jackman, although requested to do so, giving no reason at the time for his refusal; but in June he again sent for Jackman and had him subscribe as a witness. The character of Mitchell is unassailed. None of the subscribing witnesses or devisees are impeached, save by testimony of some contradictory statements. It was for the jury to determine whether Mitchell had clearly and satisfactorily proved the absence of fraud.

The presumption of fact is, undue influence by Mitchell over the testator whereby he obtained the devise to himself, and this is deemed a constructive fraud. This is what was necessary for Mitchell to rebut by proper evidence. If he satisfied the jury of the absence of such influence, there was no fraud. Hence, it was right for the court to instruct the jury upon the law applicable to the evidence, and not submit a question, of which there was no evidence. The answers to the defendants' fourth, eighth, ninth, tenth, eleventh and twelfth points, did not modify the instructions relative to the undue influence and fraud presumed from the relationship; but distinguished that influence and constructive fraud from actual fraud, or such undue influence as importunity that could not be resisted.

We think the defendants' fifth point was rightly refused. The evidence fails to show that Mitchell ever made any representation to Dougal of the value of his services, or requested compensation by a provision in his will. But Mitchell's testimony is, that he never directly or indirectly expressed an opinion to Dougal in regard to his making a will; that about a week before the making of this will, Dougal said he would make him one of his heirs; that was the only such intimation before the day of writing the will; that at the time the will was being written, Dougal wanted the devise to be in satisfaction of his

services.   Ground was not laid for the legal conclusion that the devise is void if incommensurate with the services rendered.

Judgment affirmed.